IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, SOLAE, L.L.C.  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>GEORGE R. NEELY,  )<br><br>Defendant.  ) | Civil Action No. 04-2611 MJD/JGL |

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF
NON-INFRINGEMENT, OWNERSHIP AND NON-BREACH OF CONTACT**

Plaintiffs E.I. du Pont de Nemours and Company ("DuPont") and Solae L.L.C. ("Solae") hereby seek a declaratory judgment against Defendant George R. Neely ("Neely"), and in support thereof allege:

1.  DuPont is a corporation organized under the laws of the State of Delaware, having its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

2.  Solae is a limited liability company organized under the laws of the State of Delaware, having its principal place of business at 1034 Danforth Drive, St. Louis, Missouri 63102. On March 28, 2003, DuPont formed Solae by converting its wholly owned subsidiary Protein Technologies International, Inc. ("PTI") to a limited liability corporation under Delaware law. Solae is 100% owned by Solae Holdings, L.L.C. DuPont currently holds a 71.94% interest in Solae Holdings, L.L.C.

3. Upon information and belief, Neely is an individual residing in the State of Texas. Neely is an attorney admitted to practice law in the State of Texas and has a principal place of business at 4503 Montrose Blvd., Houston Texas 77006.

4. This is an action pursuant to 28 U.S.C. §§ 2201 and 2202 seeking a declaratory judgment that:

    a. DuPont and Solae have not infringed United States Patent No. 5,858,449 (hereinafter, "the '449 Patent", attached hereto as Exhibit A), entitled "Isoflavone-Enriched Soy Protein Product And Method For Its Manufacture;"

    b. DuPont is an owner of the '449 Patent and that DuPont has duly granted Solae a license to practice the '449 Patent;

    c. That a Product Development and Commercialization Agreement dated February 14, 1997 between DuPont and Prosource, Inc. ("Prosource") (the "Commercialization Agreement", attached as Exhibit I), as amended February 20, 1998 (Amendment attached as Exhibit J) was duly terminated effective August 18, 1999; and

    d. That Neely has not acceded to Prosource's position and DuPont owes neither Prosource nor Neely any duty, payment or obligation of any manner under the terms of the terminated Commercialization Agreement.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 1338, 2201 and 2202 and ancillary and/or pendant jurisdiction.

6. Personal jurisdiction and venue are proper based on Neely's appearance as a creditor by assignment in the United States Bankruptcy Court, District of Minnesota matter *In Re Prosource, Inc.*, No. 00-60307. It is through said assignment and bankruptcy proceeding that Neely alleges to have acquired a joint ownership interest in the '449 Patent and Prosource's rights under the Commercialization Agreement.

**BACKGROUND**

7. DuPont is an owner of the '449 Patent, by a May 15, 1997 assignment from the inventors, Donald Lee Crank and Phillip Scott Kerr, and as publicly recorded in the United States Patent and Trademark Office. A copy of the assignment document is attached hereto as Exhibit B. The assignment does not limit DuPont's use of or rights to the '449 Patent technology or invention in any way. *See* Exhibit B.

8. On February 14, 1997 DuPont and Prosource, Inc. entered into the Commercialization Agreement. *See* Exhibit I. The object of the Commercialization Agreement was, using the art of the '449 Patent, then filed but not granted, "to develop and commercialize novel soy protein products so as to sell beans, the soyflour produced from the beans, the novel protein products produced from such beans and/or the technology used to produce same." *Id*. at ¶ 1.

9. The Commercialization Agreement provided that DuPont "grant[] to [Prosource] a non-exclusive license for 17 years, on a worldwide basis (1) to manufacture, produce, and market novel soy protein products from the new soybean varieties, from the soyflour from such beans . . . and (2) to use all technology developed pursuant to this Agreement in connection with such manufacture, production and marketing. . . ." *Id*. ¶ 4(a).

10. The Commercialization Agreement provided that DuPont make certain royalty payments to Prosource, payable until February 14, 2004, in connection to any license granted by DuPont to third parties for the manufacture, production, or marketing or novel soy protein products "contingent on [Prosource] satisfactory (performing requirements per reasonable timelines) meeting" its responsibilities, including to:

    a. "provide technology for development of product;"

  b.  "produce products to verify patent claims;"

  c.  "perform evaluation of products in typical meat and beverage applications;"

  d.  "provide data on claims and applications in the form of quarterly reports;"

  e.  "support product advertising and marketing efforts;"

  f.  "prepare a product commercialization plan;"

  g.  "manufacture novel soy protein for commercial use if one of the following conditions is met:

    1.  The manufacture of such product is commercially feasible, that is, provides a two year simple payback on total capital investment.

    2.  If DuPont agrees to participate in funding the capitalization in a mutually acceptable manner;" and

  h.  "seek sublicenses to third parties who will agree to manufacture soy protein product."

Id. at ¶¶ 4(c), 5.

  11.  The Commercialization Agreement provided that the "Agreement is not assignable by either party without prior written approval of both parties."

  12.  By letter dated July 19, 1999 DuPont informed Prosource that pursuant to the terms of the Commercialization Agreement and due to Prosource's material breach of the Commercialization Agreement that DuPont exercised it right to terminate the Agreement effective August 19, 1999. Attached as Exhibit K.

  13.  Prosource did not cure the material breach of the Commercialization Agreement by August 19, 1999, effectively terminating the contract. At that time, Prosource had failed

to meet its responsibilities set forth in Paragraph 5 of the Commercialization Agreement and quoted in paragraph 4 above.

14. On July 1, 2000, DuPont granted to PTI an irrevocable, nonexclusive, worldwide and royalty free license to make, use, or sell food applications to the extent permitted under any patent rights held by DuPont, including *inter alia* Patent '449. As a result of the conversion from PTI to Solae, Solae has acceded by operation of law to PTI's position as a licensee of the '449 patent.

15. Neither DuPont, PTI, Solae nor any third party licensee of DuPont, PTI or Solae have to this date developed or sold a commercial product using the art of Patent '449.

16. In a recent action filed in a <u>state</u> court in Texas (The District Court, Harris County[1]) and relating to the '449 Patent, Neely claims to be the registered owner of the '449 Patent, by assignment on or about October 8, 2001, as filed with the United States Patent and Trademark Office on or about October 20, 2001. Neely has further alleged that he acceded to Prosource's position regarding the terminated Commercialization Agreement.

17. In the Texas action, Neely sought, and was granted,[2] an investigatory deposition, despite a clear record that the issues involved are federal issues more appropriately decided in a United States District Court.[3]

---

[1]  On November 26, 2003, Neely filed a Petition for Investigatory Deposition purusuant to Texas Rule of Civil Procedure 202. Thereafter, on February 11, 2004, Neely filed a Supplemental Petition For Investigatory Deposition Under TRCP 202.1(b) Or In The Alternative TRCP 202.1(a) (the "Petition") (Exhibit C hereto).

[2]  *See* January 5, 2004 Order (Exhibit D hereto).

[3]  *See* DuPont's Plea to the Jurisdiction and Objections to Neely's Supplemental Rule 202 Petition (Exhibit E hereto).

18. On October 24, 2003, Neely sent a letter to Solae (Exhibit F hereto), requesting information regarding Solae's alleged practice of the '449 Patent invention.

19. In an October 29, 2004 telephone conversation with Solae, Neely alluded to potential patent infringement litigation stemming from Solae's alleged practice of the '449 Patent.  *See* October 30, 2003 Correspondence to Neely (Exhibit G hereto).

20. On October 31, 2004, Neely again sent yet another letter to Solae (Exhibit H hereto), alluding to his discussions with Solae and DuPont concerning their use and/or rights under the '449 Patent and requesting documents evidencing DuPont and Solae's authority to use the '449 Patent.

21. In an October 30, 2004 letter, Solae and DuPont informed Neely (1) that DuPont is an owner of the '449 Patent; (2) that Solae has a valid license to practice the '449 Patent invention; (3) that as a matter of law, "Title 35 U.S.C. § 262 provides a joint patent owner with the right to make, use or sell a patented invention without the consent of and without accounting to the other owners;" and (4) that "Solae and DuPont will consider any attempt to assert U.S. Patent No. 5,585,449 against Solae and/or DuPont as a violation of Rule 11 of the Federal Rules of Civil Procedure . . . ."  Exhibit G at pp. 1-2.

22. From October 2003 to the present, Neely has engaged in a persistent course of correspondence, communications, and negotiations, both by telephone and in writing to Solae and DuPont, in an attempt to preclude DuPont, a rightful owner of the '449 Patent, and, Solae, a rightful licensee of DuPont, from practicing the '449 invention.

23. In his February 11, 2004 Supplemental Petition (Exhibit C; *see supra* p. 2, n.1), Neely claims to be the owner of the '449 Patent; admits to discussions with "certain legal

representatives of Respondents [DuPont and Solae]" (Exhibit C at ¶3.1); and states that he "<u>anticipates litigation concerning the subject matter</u>." *Id.* at ¶ 3.7 (emphasis added).

24. During the course of the aforementioned correspondence, communications, and business dealings, Neely has repeated his infringement allegations and threatened to bring suit against DuPont and/or Solae. *See* Exhibits C, F, G, H. In response to Neely's assertions, Solae and DuPont have denied infringement, directed Neely to the applicable sections of Title 35 of the United States Code, and refused Neely's demands. *See* Exhibit G.

25. Plaintiffs have a reasonable apprehension that they will be sued by Neely for alleged infringement of the '449 Patent and breach of the Commercialization Agreement.

26. Plaintiffs have good and meritorious defenses against Neely's infringement claim, namely that DuPont and Solae have not infringed and cannot, <u>as matter of law</u>, infringe the '449 Patent, whether directly, contributorily or by inducement, because DuPont is a joint owner of the '449 Patent and has licensed its interest to Solae.

27. Likewise, Plaintiffs have good and meritorious defenses against any claim of breach of the Commercialization Agreement, namely that the Commercialization Agreement was effectively terminated; that the Commercialization Agreement was not effectively assigned to Neely on October 8, 2001; that there have been no sales by third parties of products developed using the art of the '449 Patent and therefore DuPont does not own Prosource any royalty payment; and that DuPont, as a matter of law, owes no further duty to Prosource or Neely under the terms of the Commercialization Agreement.

28. As such, plaintiffs will be filing a motion for judgment on the pleadings as soon as they can, *i.e.*, when a response to the complaint is filed.

29. In light of the foregoing allegations, an actual case and controversy therefore exists between Plaintiffs and Neely regarding the non-infringement and ownership of the '449 Patent and the existence of any ongoing duty under the terms of the Commercialization Agreement.

## COUNT I - NONINFRINGEMENT

30. Plaintiffs repeat and reallege the facts set forth in paragraphs 1 through 29 as if fully set forth herein.

31. Plaintiffs are entitled to a declaration that they have not infringed the '449 Patent.

## COUNT II - OWNERSHIP

32. Plaintiffs repeat and reallege the facts set forth in paragraphs 1 through 31 as if fully set forth herein.

33. Plaintiffs are entitled to a declaration that DuPont is a co-owner of the '449 Patent and that Solae has been duly licensed by DuPont to practice the '449 Patent.

## COUNT III – NON-BREACH OF CONTRACT

34. Plaintiffs repeat and reallege the facts set forth in paragraphs 1 through 33 as if fully set forth herein.

35. DuPont is entitled to a declaration that DuPont terminated the Commercialization Agreement, effective August 19, 1999; that Prosource could not have assigned any rights under the Commercialization Agreement to Neely; and that DuPont, as a matter of law, owes no further duty to Prosource or Neely under the terms of the Commercialization Agreement.

36. In the alternative, even if any portion of the Commercialization Agreement survived termination and was assigned to Neely, there have been no sales of products developed using the art of the '449 Patent and therefore DuPont does not own Prosource or Neely any royalty payment.

### COUNT IV – ENJOINING NEELY

37. Plaintiffs repeat and reallege the facts set forth in paragraphs 1 through 36 as if fully set forth herein.

38. Plaintiffs are entitled to a declaration that Neely is enjoined from bringing or maintaining an action or threatening to bring an action against DuPont or Solae based on the '449 Patent. or the Commercialization Agreement.

WHEREFORE, Plaintiffs prays:

A. For a judgment declaring that Plaintiffs have not infringed directly, contributorily or by inducement, United States Patent No. 5,858,449;

B. For a judgment declaring that DuPont is a joint owner of United States Patent No. 5,858,449 and that DuPont has duly licensed Solae to practice Patent No. 5,858,449;

C. For a judgment declaring that the Commercialization Agreement has been effectively terminated; that Prosource could not have assigned any rights under the Commercialization Agreement to Neely; and that DuPont, as a matter of law, owes no further duty to Prosource under the terms of the Commercialization Agreement;

D. For a judgment enjoining Defendant from bringing or maintaining an action or threatening to bring an action on United States Patent No. 5,858,449, or the Commercialization Agreement against DuPont or Solae, or from charging or asserting infringement or breach thereof against DuPont, Solae, DuPont's licensees, or buyers, users, or manufacturers of DuPont products;

E. For an award of its attorneys' fees and costs; and

F. For such other relief as the Court may deem just and proper.

Dated: May 24, 2004

FAEGRE & BENSON LLP

/s/ John P. Mandler
John P. Mandler, # 194438
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000
FAX:  (612) 766-1600
*Attorneys for Plaintiffs*

M2:20628173.01